UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES LEE WILLIAMS,<br>　　　　Plaintiff,<br>　　v.<br>ROY SCHEINGART, et al.,<br>　　　　Defendants. | Case No. 15-cv-03013-JCS<br><br>**REPORT AND RECOMMENDATION REGARDING SUFFICIENCY OF COMPLAINT OR PETITION PURSUANT TO 28 U.S.C. § 1915A**<br>Re: Dkt. Nos. 1, 21 |

## I.　INTRODUCTION

Pro se plaintiff Charles Lee Williams, frequently styled in his filings as "Charles-Lee:Williams," brings this action against a number of defendants based on his 2003 conviction for armed robbery in the California Superior Court for Alameda County, case number H-32794-A. Defendant Roy Scheingart requests that the Court review Williams's Petition (dkt. 1) pursuant to 28 U.S.C. § 1915A, noting that Williams's Petition and other filings indicate that he is currently incarcerated. *See* Admin. Mot. for Court to Screen Pl.'s Compl. (dkt. 21). The undersigned magistrate judge agrees that review under § 1915A is appropriate. For the reasons discussed below, the undersigned recommends that this action be DISMISSED without leave to amend. Because Williams has not consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c), this case will be reassigned to a United States district judge for all further proceedings, including action on the recommendations of this Report.

The case management conference and show-cause hearing set for November 6, 2015 are hereby VACATED.

## II.　BACKGROUND

In 2003, Williams was convicted of multiple counts of second degree robbery, with enhancements for use of a firearm, and possessing a firearm as a felon. *See* Petition Ex. G (dkt.

1-1) at ECF p. 35 (Abstract of Judgment).  As summarized in the context of a previous habeas proceeding, Williams robbed two beauticians' shops, armed with a nail gun during the first robbery and a handgun during the second.  *See Williams v. Malfi*, No. C 06-5825 MMC (PR), 2009 WL 2707396, at *1 (N.D. Cal. Aug. 25, 2009).  He was found guilty by a jury and, taking into account two prior "strike" convictions, sentenced to over forty years in prison.  *See id.*; Petition Ex. G at ECF p. 35.

Williams now brings a Petition captioned as follows:

> Libel Review: Answer
> Subject Matter Jurisdictional Challenge; Bus. & Prof. Code §17200 Violation (Fraudulent Acts); 28 U.S.C.A. §1333(1); 42 U.S.C. §1986
>
> "PETITION"

Petition at 1.  The Petition names the People of the State of California as a defendant, "D/B/A" (sic) a number of individuals who appear to be state or local government officials and employees who played a role in Williams's arrest, trial, and/or incarceration.  *See id.*  Williams's arguments are difficult to follow—as discussed in the analysis below, they rest on a number of fundamentally inaccurate premises regarding the legal systems and governments of the United States and the State of California—but the underlying current of his arguments is that the state court in which he was convicted lacked jurisdiction.  Williams seeks more than seventy million dollars in damages and release of "the property"—apparently referring to himself—without any parole supervision.  *Id.* at 18.

The Petition and supporting documents include language typical of an anti-government philosophy commonly referred to as the "sovereign citizen" movement.  *See, e.g.*, Petition Ex. H at 1 ("Identification of Moving Party and Status of Secured Party," stating that "Charles Lee: Sui juris of the Williams Family" is the "the Holder-In-Due-Course by recorded Security Agreement, and holds a Superior Priority Claim over CHARLES LEE WILLIAMS [DEBTOR]" (brackets in original)); *id.* at 4 ("I, Charles Lee Williams as Grantor and Sole Beneficiary of the CHARLES LEE WILLIAMS© *Cestui Que Vie trust*, a documented vessel under United States registry, otherwise described as CHARLES LEE WILLIAMS©" or any alphabetical or numerical variation

thereof, a.k.a. (Debtor), make the following declarations."); *see generally United States v. Mitchell*, 405 F. Supp. 2d 602 (D. Md. 2005) (summarizing this philosophy). Such arguments generally contend that most if not all of the state and federal government, statutory structure, and legal system is invalid or illegitimate, or at least that individuals can essentially opt out of the rules of society through convoluted legalistic loopholes. As far as the undersigned is aware, no court to consider these arguments has found any merit in them whatsoever.

This is not the first action that Williams has filed raising issues related to his arrest and conviction. On January 9, 2004, Williams filed a civil action under 42 U.S.C. § 1983 against the Alameda County Sheriff's Department, the cities of Oakland, Hayward, and San Leandro, and the Oakland and San Leandro police departments. *See generally Williams v. City of Oakland*, No. 3:04-cv-00117-MMC (N.D. Cal.). That case was assigned to the Honorable Maxine M. Chesney, a district judge of this Court, who dismissed it without prejudice because Williams's claims necessarily called into question the validity of his state court convictions. Order of Dismissal, *id.* dkt. 14 (Mar. 22, 2004).[1] On September 22, 2006, Williams filed a petition for habeas corpus in a case assigned also assigned to Judge Chesney. *See Williams v. Malfi*, No. C 06-5825 MMC (PR), 2009 WL 2707396, at *1 (N.D. Cal. Aug. 25, 2009). Judge Chesney carefully considered Williams's arguments—which appear to have been more traditional than those advanced in the present case—and ultimately denied the petition. *See generally id.* Williams filed a second habeas petition on July 14, 2009, which Judge Chesney dismissed because Williams failed to obtain leave from the Ninth Circuit to file a second or successive petition pursuant to 28 U.S.C. § 2244(b)(1). *See generally Williams v. Walker*, No. C 09-3194 MMC (PR), 2009 WL 4676372 (N.D. Cal. Dec. 9, 2009).

In the present case, no party appeared at the case management conference scheduled for

---

[1] Williams also filed a § 1983 action based on the conditions of his confinement at the Santa Rita County Jail, a separate issue from his arrest and conviction. *See generally Williams v. Campos*, No. C 04-2086 MMC (PR), 2006 WL 292418 (N.D. Cal. Sep. 27, 2006); *aff'd sub nom Williams v. Alameda Cty. Sheriff Dep't*, 256 Fed. App'x 961 (9th Cir. 2007). Judge Chesney granted summary judgment for the two defendants who had been served in that case and allowed Williams thirty days to serve a third defendant. *See id.* She later dismissed the claims against the remaining defendant because Williams failed to serve him before that deadline. *Id.* dkt. 45 (Nov. 17, 2006).

October 2, 2015.  *See* dkt. 19.  The undersigned issued an Order to Show Cause why the case should not be dismissed on October 5, 2015.  Dkt. 24.  The same day, Scheingart filed his Administrative Motion asking the Court to review Williams's Petition under § 1915A.  On October 9, 2015, the Court received a letter dated October 2 purportedly from Williams (but signed by his wife, Shauna Marie Williams, as "Atty-in-fact" (sic)) stating that Williams is incarcerated at San Quentin State Prison and cannot appear without a transportation order.

### III. ANALYSIS

#### A. Legal Standard

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or from an officer or employee of a governmental entity.  *See* 28 U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.  *See id.* § 1915A(b).

Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  "A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203−04 (9th Cir. 1988) (per curiam)).

#### B. Williams's Civil Rights Claims Are Barred by *Heck*

In *Heck v. Humphrey*, the Supreme Court prohibited civil rights damages claims that necessarily imply the invalidity of a criminal conviction that has not already been invalidated by other means:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . . Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a

> judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck v. Humphrey*, 512 U.S. 477, 486−87 (1994). "*Heck* applies equally to claims brought under §§ 1983, 1985 and 1986." *McQuillon v. Schwarzenegger*, 369 F.3d 1091, 1097 n.4 (9th Cir. 2004).

The damages that Williams seeks derive entirely from his conviction and subsequent incarceration. *See* Petition at 18. His arguments are based on the premise that the state court in which he was convicted lacked jurisdiction. *See, e.g.*, *id.* at 1 (caption indicating that Williams seeks to bring a "Subject Matter Jurisdictional Challenge"). Accordingly, a judgment in his favor "would necessarily imply the invalidity of his conviction or sentence." *See Heck*, 512 U.S. at 487. Neither Williams's conviction nor his sentence has been invalidated through an appropriate process. Williams's claims for damages must therefore be dismissed pursuant to *Heck*.

### C.  Habeas Relief Has Been Previously Denied

Williams's Petition could perhaps be liberally construed as seeking a writ of habeas corpus. He captioned the initiating document as a "petition," named at least one prison warden as a defendant, and appears to seek release from prison. *See* Petition at 18 ("I authorize the governmental actors involved in this matter . . . to release the property[2] within 72 hours upon receipt or a hearing with all parties present . . . . The release will be an unsupervised release, i.e. no parole obligation.").

To the extent that Williams seeks habeas corpus, such relief is procedurally barred by 28 U.S.C. § 2244, which governs "second or successive" applications for habeas relief where "the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus." The statute permits successive applications only in narrow circumstances, and then only after the petitioner obtains an order from "the appropriate court of appeals . . . authorizing the district court to consider the application." *Id.* § 2244(b)(3), (4).

---

[2] In context, "the property" appears to refer to Williams himself.

5

Judge Chesney has rejected two previous efforts by Williams to obtain habeas relief, first on the merits, and then based on § 2244. The United States Court of Appeals for the Ninth Circuit has not issued an order authorizing a successive petition. Accordingly, to the extent Williams's Petition could be construed as seeking a writ of habeas corpus, it must be dismissed.

### D. Each of Williams's Claims Lacks Merit

The reasons stated above—*Heck* with respect to Williams's damages claims, and § 2244 with respect to habeas—are sufficient to warrant dismissal. Even if that were not so, Williams's Petition fails to state any claim on which relief could be granted. As discussed briefly below, each of the grounds for relief presented in the Petition rests on a deeply flawed understanding of the legal system, and none of the other documents Williams has submitted provide any basis for relief.

#### 1. Grounds for Relief Included in Petition

"Ground 1" is based on the premises that (1) Williams was not named in any indictment, apparently based on an issue of capitalization; and (2) Williams did not "consent to the transaction" of his criminal trial. *See* Petition at 2−3. The capitalization of a defendant's name has no bearing on the validity of an indictment, and state court jurisdiction over criminal defendants does not require consent.

"Ground 2" is based on the premise that "cause H-32794-A is a territorial special maritime transaction," and "no maritime nexus can be affirmatively established." *Id.* at 4. This is incorrect; the state court action arose from the California Penal Code and thus requires no "maritime nexus."

"Ground 3" is based on the premise that the California Superior Court in which Williams was convicted is an Article I territorial court and thus lacked jurisdiction over Williams. *Id.* at 4−6. California is a state with its own sovereign powers under the federal structure of the United States. Its courts—which are not territorial courts—derive their jurisdiction and authority from the state's sovereignty and Article 6 of the California Constitution, not from Article I of the United States Constitution. *See* Cal. Const. art. 6 § 10 ("Superior courts have original jurisdiction in all other cases.").

"Ground 4" is based on some combination of the maritime law and territorial court premises discussed and rejected above. Petition at 6−7.

"Ground 5" asserts that the state court lacked jurisdiction for failure to "inclusively mention the private man, Charles-Lee:Williams." *Id.* at 7. This appears to be a version of the same argument discussed above in "Ground 1," and is frivolous.

"Ground 6" is based on the premise the state court action was "a commercial transaction where private corporate commercial paper [was] concerned." *Id.* at 8. Williams's state court case was criminal prosecution, not a commercial transaction.

"Ground 7" is based on a number of frivolous premises, including that California courts "exercis[e] special maritime and territorial jurisdiction," that "California . . . operates as a for-profit subsidiary under the control and authority of United States Inc.," that Williams's prosecution was "a special maritime cause" in which the state "descends to the level of a mere private corporation," and that Williams is immune from prosecution because he is a "non-taxpayer." *Id.* at 9−10. None of those premises are in any way accurate.

"Ground 8" is based on the premise that "respondent Roy Scheingart prosecuted a tax matter" against Williams. *Id.* at 10. Armed robbery of beauticians' shops is not a tax matter.

"Ground 9" asserts that "specific performance bonds" were required in the state court action because the government officials involved "operate under corporate authority." *Id.* at 11. This is false.

"Ground 10" through "Ground 14" are based on the premise "that CHARLES LEE WILLIAMS of cause H-32794-A, is a constructive trust," owned by the State of California, as evidenced by Williams's birth certificate. *Id.* at 11. A birth certificate is evidence of the birth of a person, not the creation of a trust.

"Ground 15" is a long and rambling claim of fraud that incorporates a number of the erroneous premises discussed above—particularly the concept that Williams's criminal prosecution was in fact a commercial dispute regarding a trust—as well as the baseless claim that California Superior Court judges cannot preside over criminal trials based on the California Penal Code because they are employed by the state. *See id.* at 15−17.

"Ground 16" through "Ground 20" are each stated briefly without any explanation, and similarly rely on fundamental misunderstandings or mischaracterizations of Williams's criminal

1  prosecution and conviction. *See, e.g.*, *id.* at 17 ("GROUND 16: Is it not true, as a matter of law,
2  that the court summary process of cause H-32794-A, is operating under Federal bankruptcy, and is
3  insolvent?").

                **2. Additional Documents**

5          Williams has filed a number of other documents either in conjunction with or after his
6  Petition. He filed a letter with his Petition that appears to seek payment from the Court in
7  exchange for his silence as to unspecified government misconduct—a request that is improper on
8  multiple levels, and regardless, adds nothing to his claims. *See* dkt. 3. A lengthy "Amendment"
9  filed on July 13, 2015 challenges the probable cause for Williams's arrest in 2002. *See generally*
10 Amendment (dkt. 5). Such a claim—brought long after Williams's conviction and more than
11 thirteen years after the arrest at issue—is barred by *Heck* as discussed above, and by the statutes of
12 limitations for civil rights claims. *See* 42 U.S.C. § 1986 ("But no action under the provisions of
13 this section shall be sustained which is not commenced within one year after the cause of action
14 has accrued."); *Owens v. Okure*, 488 U.S. 235, 240−41 (1989) ("[A] State's personal injury statute
15 of limitations should be applied to all [42 U.S.C.] § 1983 claims."); Cal. Civ. Proc. Code § 335.1
16 (setting a two-year statute of limitations for personal injury claims). Further, the arguments of the
17 Amendment rest on assertions that have no basis in law, including that Williams "is not a subject
18 under territorial Congressional Jurisdiction" and purported constitutional distinctions between
19 sheriffs and police officers. *See* Amendment at 4, 8.
20         On July 20, 2015, Williams filed an "Affidavit of Letter of Instruction to Clerk" asserting
21 that he is "a non-United States Inc. 14th Amendment citizen," disclaiming any "relationship or
22 allegiance to territorial Congress," and once again asserting a distinction between "Charles-
23 Lee:Williams" as a person and "CHARLES LEE WILLIAMS" as a constructive trust. *See* dkt. 7.
24 The assertions of this affidavit have no basis in law or fact and do not alter Williams's failure to
25 state a claim on which relief can be granted.
26         Certain other documents bear the signature of Williams's wife Shauna Marie Williams
27 (sometimes styled "Shauna-Marie:Williams"). *E.g.*, dkts. 13, 25. Ms. Williams is not an attorney
28 admitted to the bar of this Court, and therefore cannot represent her husband in this action. *See*

8

Civ. L.R. 3-9(a), 11-1, 11-8. She is also not a party to this case. The undersigned therefore disregards her filings.[3]

## IV. CONCLUSION

For the reasons stated above, the undersigned recommends that this action be DISMISSED pursuant to 28 U.S.C. § 1915A. The undersigned finds that leave to amend would be futile and recommends that it be DENIED. This case will be reassigned to a United States district judge for all further proceedings, including action on this recommendation. If Charles Lee Williams objects to this recommendation, he may file an objection **no later than fourteen days after he is served with a copy of this Report.**

The Clerk is instructed to update Charles Lee Williams's address to indicate that he is incarcerated at San Quentin State Prison and to serve a copy of this Report on him there. A copy of this Report shall also be sent to Shauna Marie Williams at the Oregon address currently listed for Mr. Williams.

Dated: October 27, 2015

_____
JOSEPH C. SPERO
Chief Magistrate Judge

---

[3] It is possible that the documents purportedly signed by Charles Lee Williams were in fact also signed and submitted by Shauna Marie Williams. For the reasons discussed elsewhere in this Report, this action warrants dismissal even if Mr. Williams actually submitted the documents bearing his name. The Court therefore need not address the question of their authenticity. This Report assumes for the sake of argument that such documents are genuine.